SMART *v.* FLORIDA EAST COAST RAILWAY CO.

1. COURTS — FEDERAL CONSTITUTION — DECISIONS OF FEDERAL SUPREME COURT BINDING ON STATE COURTS.
   In a case presenting ·assertion of rights secured by the Federal Constitution, the State courts are bound by the decisions of the United States Supreme Court.

2. CORPORATIONS — FOREIGN CORPORATIONS AMENABLE TO PROCESS ONLY WHEN DOING BUSINESS IN STATE.
   A foreign corporation is amenable to process to enforce a personal liability, in the absence of consent, only if it is doing business within the State in such manner and to such extent as to warrant the inference that it is present there, and even then, process will be valid only if served upon some authorized agent.

3. SAME—RAILROADS SOLICITING INTERSTATE TRANSPORTATION BUSINESS ONLY NOT DOING BUSINESS IN STATE—PROCESS.
   The maintenance of offices within the State of Michigan by foreign railroad corporations for the solicitation of business of interstate transportation, where they neither

---

[1]Courts, 15 C. J. § 318; [2]Corporations, 14a C. J. §§ 4078, 4134; 23 L. R. A. 491-495; 21 R. C. L. 1340; 3 R. C. L. Supp. 1227; 5 R. C. L. Supp. 1189; 6 R. C. L. Supp. 1308; [3]Id., 14a C. J. § 4094; 9 L. R. A. (N. S.) 1214; 21 R. C. L. 1343; 3 R. C. L. Supp. 1227.

own nor operate any lines within the State, is not doing business within the State so as to authorize service of process on the local agents soliciting such business, under 3 Comp. Laws 1915, § 12434.

4. COMMERCE — SOLICITATION OF INTERSTATE BUSINESS PROTECTED BY FEDERAL CONSTITUTION.

Solicitation in a State by a common carrier of business of interstate transportation is not the transacting within the State of business beyond the protection of the Federal Constitution.

Certiorari to Wayne; North (Walter H.), J., presiding. Submitted June 8, 1927. (Docket No. 39.) Decided October 3, 1927.

Case by Richard A. Smart against the Florida East Coast Railway Company, the Southern Railway Company, the Baltimore & Ohio Railroad Company, and the Pere Marquette Railway Company for damages to goods in transit: On motion by the Southern Railway Company and the Baltimore & Ohio Railroad Company to set aside service of process. From an order denying the motions, said defendants bring certiorari. Reversed, and order vacated.

*W. K. Williams* and *J. C. Kaufman* (*Charles Clark* and *Frank H. Cole, Jr.,* of counsel), for appellants.

*Raymond E. Alloway,* for appellee.

FELLOWS, J. The plaintiff brought this action to recover for damages done to household goods in transporting them from Cocoa, Florida, to Detroit, over the lines of the various defendants. So far as important here, they were transported from Jacksonville, Florida, to Cincinnati, Ohio, by defendant Southern Railway Company; from Cincinnati to Toledo, Ohio, by defendant Baltimore & Ohio Railroad Company; from Toledo to Detroit by defendant Pere Marquette Rail-

---

[4]Commerce, 12 C. J. § 19.

way Company. It does not appear that any service was had on defendant Florida East Coast Railway Company. Service was had on one R. C. Semon, a representative of defendant Southern Railway Company, and on one Daniel L. Moorman, a representative of defendant Baltimore & Ohio Railroad Company. Motions were made to set aside the service on these defendants. These motions were overruled and this writ of certiorari brings before us the validity of such action.

We are persuaded that this record presents but questions of law alone and that the controlling facts are not in dispute. Both of these defendants are common carriers engaged in interstate commerce. Neither of them owns or operates any lines in Michigan; neither is organized under the laws of this State. The Southern is incorporated under the laws of Virginia and the Baltimore & Ohio under the laws of Virginia and Maryland. Both maintain offices in Detroit for the solicitation of business; both have clerks there employed; the Southern advertises in the local telephone directory and has two telephone numbers; the Baltimore & Ohio in connection with the Pere Marquette sells tickets over its lines outside of Michigan, the Pere Marquette performing the Michigan service. It was held by the trial court that, under these circumstances, service under section 12434, 3 Comp. Laws 1915, gave the court jurisdiction to proceed *in personam.*

The case presents the assertion of rights secured by the Federal Constitution, and by the decisions of the final interpreter of that Constitution, the Supreme Court of the United States, we are and should be bound.

"A foreign corporation is amenable to process to enforce a personal liability, in the absence of consent, only if it is doing business within the State in such manner and to such extent as to warrant the inference

that it is present there. And even if it is doing business within the State the process will be valid only if served upon some authorized agent." *Philadelphia, etc., R. Co.* v. *McKibbin,* 243 U. S. 264 (37 Sup. Ct. 280).

Were these two defendants doing business within this State, and a business of such a character as to warrant the inference that they were present in the State? Were they here doing a business not protected by the Federal Constitution? They had not domesticated here, had no designated agent upon whom process could .be served, have not consented by a general appearance to here litigate their disagreement with plaintiff. Both were engaged as common carriers in interstate commerce, and the shipment involved was an interstate shipment. Had they been here operating lines of road the service would be good. *Amyot* v. *Wayne Circuit Judge,* 221 Mich. 256. They, however, operated no lines of road in this State. Their activities in this State consisted in soliciting business, business to be transacted out of the State, and that business so solicited was wholly in interstate commerce, the transportation of persons and property between the States.

That soliciting in a State by a common carrier of the business of transporting persons and property between the States is not the transacting within the State of business beyond the protection of the Federal Constitution, is settled by numerous decisions of the Federal court of last resort. In *McCall* v. *California,* 136 U. S. 104 (10 Sup. Ct. 881), McCall was engaged at San Francisco in soliciting for the New York, Lake Erie & Western Railroad the business of transporting passengers over its lines from Chicago to New York. The railroad company owned and operated no line in California. He failed to pay the license exacted by local authorities for the conduct of such

business. In reversing the case and holding that the tax was a direct burden on interstate commerce, it was said:

"Tested by these principles and definitions, what was the business or occupation carried on by the plaintiff in error on which the tax in question was imposed? It is agreed by both parties that his business was that of soliciting passengers to travel over the railroad which he represents as an agent. It is admitted that the travel which it was his business to solicit is not from one place to another within the State of California. His business, therefore, as a railroad agent had no connection, direct or indirect, with any domestic commerce between two or more places within the State. His employment was limited exclusively to inducing persons in the State of California to travel from that State into and through other States to the city of New York. To what, then, does his agency relate except to interstate transportation of persons? Is not that as much an agency of interstate commerce as if he were engaged in soliciting and securing the transportation of freight from San Francisco to New York city over that line of railroad? If the business of the New York, Lake Erie & Western Railroad Company in carrying passengers by rail between Chicago and New York and intermediate points, in both directions, is interstate commerce, as much so as is the carrying of freight, it follows that the soliciting of passengers to travel over that route was a part of the business of securing the passenger traffic of the company. The object and effect of his soliciting agency were to swell the volume of the business of the road. It was one of the 'means' by which the company sought to increase and doubtless did increase its interstate passenger traffic. It was not incidentally or remotely connected with the business of the road, but was a direct method of increasing that business. The tax upon it, therefore, was, according to the principles established by the decisions of this court, a tax upon a means or an occupation of carrying on interstate commerce, pure and simple."

And in *Sioux Remedy Co.* v. *Cope,* 235 U. S. 197

(35 Sup. Ct. 57), having reference to the limitations of the Federal Constitution, it was said:

"One of these limitations is that before indicated arising from the commerce clause, whose operation, as this court has said, is such that a corporation authorized by the State of its creation to engage in interstate commerce 'may not be prevented by another State from coming into its limits for all the legitimate purposes of such commerce.' *Western Union Telegraph Co.* v. *Kansas,* 216 U. S. 1, 27 (30 Sup. Ct. 190)."

In the case of *Green* v. *Railway Co.,* 205 U. S. 530 (27 Sup. Ct. 595), it was held by the court (quoting from the syllabus):

"A railroad company which has no tracks within the district is not doing business therein in the sense that liability for service is incurred because it hires an office and employs an agent for the merely incidental business of solicitation of freight and passenger traffic."

Mr. Justice Moody, speaking for the court, there said:

"The question here is whether service upon the agent was sufficient, and one element of its sufficiency is whether the facts show that the defendant corporation was doing business within the district. It is obvious that the defendant was doing there a considerable business of a certain kind, although there was no carriage of freight or passengers. * * *

"The business shown in this case was in substance nothing more than that of solicitation. Without undertaking to formulate any general rule defining what transactions will constitute 'doing business' in the sense that liability to service is incurred, we think that this is not enough to bring the defendant within the district so that process can be served upon it."

This case has been frequently cited. In *Philadelphia, etc., R. Co.* v. *McKibbin, supra,* it was cited to this proposition:

"Even hiring an office, the employment by a foreign railroad of a 'district freight and passenger agent * * * to solicit and procure passengers and freight to be transported over the defendant's line,' and having under his direction 'several clerks and various traveling passenger and freight agents' was held not to constitute 'doing business within the State.' "

These cases doubtless lead up to and support the recent case of *Davis* v. *Farmers Co-Operative Co.*, 262 U. S. 312 (43 Sup. Ct. 556), which can not be distinguished from the one before us. The statute of Minnesota (Gen. Stat. 1913, § 7735) expressly authorized such a service as was had in the instant case. Mr. Justice Brandeis, who wrote for the court, said:

"Solicitation of traffic by railroads, in States remote from their lines, is a recognized part of the business of interstate transportation. * * *

"That the claims against interstate carriers for personal injuries and for loss and damage of freight are numerous; that the amounts demanded are large; that in many cases carriers deem it imperative, or advisable, to leave the determination of their liability to the courts; that litigation in States and jurisdictions remote from that in which the cause of action arose entails absence of employees from their customary occupations; and that this impairs efficiency in operation, and causes, directly and indirectly, heavy expense to the carriers; these are matters of common knowledge. Facts, of which we, also, take judicial notice, indicate that the burden upon interstate carriers imposed specifically by the statute here assailed is a heavy one; and that the resulting obstruction to commerce must be serious."

And it was held that the statute was in conflict with the commerce clause of the Federal Constitution. Our statute is more general in its terms than the Minnesota statute, but to sustain the service in the instant case we must hold it to be of like purport. To hold that service under our statute is good, as applied to the facts in the instant case, to hold that service is good when made on an agent engaged in

soliciting the business of interstate transportation by an interstate common carrier of a distant State, would be to fly in the face of this decision and to question its soundness. This we are not disposed to do. This case and those which have preceded it must be taken as decisive of the questions here involved.

The order made in the case must be vacated and the case remanded with directions to grant defendants' motions and enter orders setting aside the service on them. They will have single costs of this court.

SHARPE, C. J., and BIRD, SNOW, STEERE, WIEST, CLARK, and McDONALD, JJ., concurred.